# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUSTIN DEVEROUX,**<br><br>    **Plaintiff**<br><br>    v.<br><br>**TT MARKETING, INC.,**<br><br>    **Defendant** | **CASE NO. 1:18-CV-487 AWI SAB**<br><br>**ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>(Doc. No. 11) |

This case arises out of the report by Defendant TT Marketing, Inc.'s ("TTM") to various credit reporting agencies of a debt allegedly owed by Plaintiff Justin Deveroux ("Deveroux"). Deveroux disputes that he owes the debt and has brought claims against TTM for violations of the Federal Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692 et seq.), the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") (Cal. Civil Code § 1788), and the California Consumer Credit Reporting Agencies Act ("CCRAA") (Cal. Civ. Code § 1785.25). Currently before the Court is TTM's Rule 12(b)(2) motion to dismiss. For the reasons that follow, TTM's motion will be granted in part and this case will be dismissed.

## **RULE 12(b)(2) FRAMEWORK**

Personal jurisdiction is a constitutional requirement that is meant to protect the interests of a defendant by ensuring that the defendant is not hauled into a distant and inconvenient forum to which he has little or no connection. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). The plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011);

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Where a defendant's motion to dismiss is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Although plaintiffs cannot "simply rest on the bare allegations of [their] complaint," uncontroverted allegations in the complaint must be taken as true. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Courts do not assume the truth of allegations in a pleading which are contradicted by affidavit, but courts do resolve factual disputes in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 134 S.Ct. 746, 753 (2014); Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Since the California "long-arm statute" permits the exercise of personal jurisdiction to the full extent permitted by the U.S. Constitution, a court's personal jurisdiction inquiry centers on whether exercising jurisdiction comports with due process. Daimler, 134 S.Ct. at 753; Picot, 780 F.3d at 1211. In order for a state to exercise personal jurisdiction over a nonresident, the "nonresident generally must have certain minimum contacts with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Picot, 780 F.3d at 1211.

Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation," and the "defendant's suit-related conduct must create a substantial connection with the forum State."[1] Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014); Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017). Stated differently, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1781 (2017) (quoting

---

[1] There are two types of personal jurisdiction, general and specific. Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1779-80 (2017). Because Deveroux does not claim that general jurisdiction exists, the Court will limit its discussion to specific jurisdiction.

2

Goodyear Dunlop Tires Operat5ions, S.A. v. Brown, 564 U.S. 914, 919 (2011)). The Ninth Circuit utilizes a three part test to determine whether specific jurisdiction exists:[2] (1) the non-resident must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Axiom Foods, 874 F.3d at 1068; Picot, 780 F.3d at 1211; Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs, but if the plaintiff is successful, the burden then shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would be unreasonable. Axiom Foods, 874 F.3d at 1068; Picot, 780 F.3d at 1211-12. Personal jurisdiction must exist for each claim asserted. Picot, 780 F.3d at 1211. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 742 (9th Cir. 2013).

With respect to the first prong, "purposeful direction," courts utilize the three-prong "effects test." Axiom Foods, 874 F.3d at 1069; Picot, 780 F.3d at 1213; Schwarzenegger, 374 F.3d at 803. Under the effects test, there is "purposeful direction" by a non-resident defendant if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that he knows is likely to be suffered in the forum state. Axiom Foods, 874 F.3d at 1069; Picot, 780 F.3d at 1214; Schwarzenegger, 374 F.3d at 803. An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." In re W. States, 715 F.3d at 743 n.25. The "express aiming" analysis "depends to a significant degree on the specific type of tort or other wrongful conduct at issue."

---

[2] The first part of the three part test encompasses two distinct concepts, "purposeful direction" and "purposeful availment." Lazar v. Kroncke, 862 F.3d 1186, 1201 (9th Cir. 2017). "Purposeful availment" is generally used to analyze contract claims, while "purposeful direction" is used to analyze tort claims. Picot, 780 F.3d at 1212. Courts generally analyze FDCPA claims under the "purposeful direction" framework. E.g. Couvillier v. Dillingham & Assocs., 2014 U.S. Dist. LEXIS 100333 (D. Nev. July 23, 2014); Branca v. Ocwen Loan Servicing, LLC, 2013 U.S. Dist. LEXIS 201815, at *28-29 (C.D. Cal. Dec. 27, 2013). Further, although the parties' briefing addresses "purposeful availment," they both apply the "effects test." The "effects test" is derived from the case of *Calder v. Jones*, 465 U.S. 783 (1984), and is applied in tort/"purposeful direction" cases. See Axiom Foods, 874 F.3d at 1069; In re W. States, 715 F.3d at 743. The parties do not explain why a "purposeful availment" analysis should apply. Therefore, the Court will limit its analysis and discussion to "purposeful direction."

3

Picot, 780 F.3d at 1206; Schwarzenegger, 374 F.3d at 807. The relationship between the defendant, the forum and the litigation must arise out of contacts that the defendant himself creates with the forum. Walden, 134 S.Ct. at 1122; Axiom Foods, 874 F.3d at 1068. Courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S.Ct. at 1122; Picot, 780 F.3d at 1214. Courts are "limited to 'the defendant's suit-related conduct.'" Picot, 780 F.3d at 1215 n.3 (quoting Walden, 134 S.Ct. at 1121). "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." Walden, 134 S.Ct. at 1122, 1125; Picot, 780 F.3d at 1214. "The proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. at 1125; see also Picot, 780 F.3d at 1214. A theory of "individualized targeting," which relies on a plaintiff's strong connection to a forum and the defendant's knowledge that the plaintiff is a resident of that forum and will experience foreseeable harm in that forum, on its own will not support a finding of "express aiming" or specific jurisdiction. Axiom Foods, 874 F.3d at 1069-70; see also Walden, 134 S.Ct. at 1124-25.

With respect to the second prong ("arising out of or relating to"), the Ninth Circuit refers to this prong as the "but for" test. In re W. States, 715 F.3d at 742. Under the second prong, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." Id. That is, a plaintiff must show that "but for" the defendant's forum related conduct, the injury would not have occurred. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007).

With respect to the third prong ("reasonableness"), the Ninth Circuit considers seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. In re W. States, 715 F.3d at 745; Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002).

## FACTUAL BACKGROUND

From the Complaint and the declarations submitted by the parties, in 2012, Deveroux leased an apartment from Island Villas apartment complex in Corpus Christi, Texas. See Clifton Dec. Ex. D. Deveroux apparently moved out of the complex prior to the expiration of the lease. See Clifton Dec. ¶ 3. Island Villas claimed that Deveroux owed approximately $5,000 in various fees and accelerated rent. See Clifton Reply Dec. Ex. H.

Island Villas engaged TTM to attempt to collect the $5,000 from Deveroux. See Clifton Dec. ¶¶ 3, 9. TTM is debt collection company that is incorporated in Texas and has its principal place of business in Texas. See id. at ¶¶ 2, 3. TTM does not and never has had an office California, does not own property in California, has no employees or company files in California, has no agent for service in California, does not pay taxes or maintain bank accounts in California, is not licensed or registered in California, does not have an agent for service of process in California, does not engage in marketing or advertising activities in California or target California consumers, derives no income from California, and does not solicit business from California through the internet. See id. at ¶¶ 4-7. Thus, a Texas apartment complex, contracted with a Texas debt collector to collect on a Texas debt allegedly owed by a Texas resident. See id. at ¶ 9.

On August 9, 2013, TTM reported the $5,000 debt to Experian at Experian's data center in Allen, Texas. See id. Prior to December 2015, all communications between Deveroux and TTM occurred either in Texas or Arizona. See id. at ¶ 8.

Deveroux has disputed being indebted to Island Villas seven times. See Clifton Reply Dec. ¶ 2. The first dispute was received by Tenant Tracker, Inc. ("TTI") in Texas on January 27, 2014. See id. On January 30, 2014, the indebtedness was re-verified and notice of the re-verification was sent to Deveroux in Arizona on January 30, 2014. See id.

The second dispute was received by TTI in Texas on March 20, 2014. See id. The indebtedness was re-verified and notice of the reverification was sent to Deveroux in Arizona the same day (March 20). See id.

On April 11, 2014, Deveroux notified TTI that he was no longer disputing the indebtedness and demanded that TTI remove any reference from his credit file to the account as

being disputed.  See Clifton Reply Dec. ¶ 3.  Deveroux did not withdraw his disputes that were made to TTM.  See id.  Also on April 11, 2014, TTM revised its reporting to include the note: "Account information disputed by customer."  Clifton Dec. ¶ 3.  This revision was generated in Texas and sent to Experian at Experian's data operations center in Texas.  See id.

The third dispute was received by TTI in Texas on May 1, 2014.  See Clifton Reply Dec. ¶ 2.  The indebtedness was re-verified and notice of the reverification was sent to Deveroux in Arizona the same day (May 1).  See id.

The fourth dispute was received by TTM on June 27, 2014.  See id.  On July 1, 2014, TTM responded to Deveroux at his Arizona address and informed him that his account had been referred to another collection agency, NCO Financial Systems.  See id.

The fifth dispute was received by TTM in Texas on December 16, 2015.  See id.  Deveroux informed TTM that he was now a California resident.  See Deveroux Dec. ¶ 2.  TTM responded to Deveroux at his California address on December 29, 2015, and stated that TTM is still the collection agency for the collection account, but referred Deveroux to its agent, Trans World Systems, Inc. for further information.  See id.; Clifton Reply ¶ 2.

Sometime after having moved to California, Deveroux sent disputes regarding various items on his credit report to Experian.  See Deveroux Dec. ¶ 3.  Experian responded on December 20, 2015.  See id.; Deveroux Ex. A.  Experian deleted or updated several items, but indicated that a dispute with TTM remained.  See Deveroux Dec. Ex. A.

The sixth dispute was received by TTM in Texas on January 15, 2016.  See Clifton Reply Dec. ¶ 2.  On January 29, 2016, TTM responded to Deveroux at his California address by stating that it had reverified the debt on December 29 and again referred him to Trans World Systems.  See id.; Deveroux Dec. ¶ 2.

The seventh dispute was received by TTM in Texas on November 16, 2017.  See Clifton Reply Dec. ¶ 2.  The same day, TTM responded to Deveroux at his California address and again referred him to Trans World Systems.  See id.; Deveroux Dec. ¶ 2.

Experian credit reports regarding Deveroux from February 2018 and June 2018 indicate that he is indebted to TTM in relation to the dispute with Island Villas.  See Deveroux Dec. Ex. B.

6

Each of TTM's communications to Deveroux in California were made in response to communications from Deveroux and received by TTM in Texas. See Clifton Reply Dec. ¶ 2. There is no evidence that TTM made demands of Deveroux while he was in California for the alleged Island Villas indebtedness, and TTM did not engage in any collection activity in California to collect on the Island Villas indebtedness. See id. at ¶ 10.

## **DEFENDANTS' MOTION**

*Defendant's Arguments*

TTM argues that personal jurisdiction does not exist. First, there was no purposeful direction. Deveroux was in Texas when the dispute arose and then moved from state to state. TTM argues that its acts towards Deveroux were minimal and informational, and generally directed Deveroux to a different collection agency. Contact with TTM was initiated by Deveroux. Second, TTM argues that because it engaged in no conduct in California, there is no nexus between forum related conduct and the causes of action alleged in the lawsuit. Third, no harm could result to Deveroux merely from TTM providing information to him. Fourth, exercising jurisdiction over TTM would be unreasonable.

*Plaintiff's Opposition*

Deveroux argues that specific jurisdiction exists because TTM has been furnishing negative and erroneous credit reporting about him monthly since 2014. TTM knew that he was a California resident based on the correspondences that it sent to California. Further, although TTM claims that it informed Experian of the disputed indebtedness, Deveroux argues that Experian credit report does not contain a dispute notation, in violation of the FDCPA and the RFDCPA. Deveroux argues that TTM's continued erroneous credit-reporting following receipt of his disputes were felt by him in California. Deveroux argues that there is nothing unreasonable about TTM defending a suit where he lives and where he felt the effects of improper credit reporting.

*Discussion*

Personal jurisdiction must be satisfied with respect to each claim alleged against TTM. See Picot, 780 F.3d at 1211. The Court will address Deveroux's claims separately.

7

1. **FDCPA**

    a. Purposeful Direction

    (1) Intentional Acts

The conduct at issue by TTM are correspondences with Deveroux and reports to Experian. Neither party contests that the correspondences and reports constitute "intentional acts." Therefore, TTM engaged in "intentional acts" through its correspondences to Deveroux and reports to Experian. See In re W. States, 715 F.3d at 743 n.25.

    (2) Express Aiming

With respect to the correspondences, from December 2015 forward, TTM sent correspondences to Deveroux in California. Because the correspondences went into California, and TTM knew that the correspondences were going to Deveroux's California address, the Court concludes that the correspondences were expressly aimed at California.

With respect to the reports from TTM to Experian, there is a problem. The initial efforts to collect the Island Villas debt appear to have occurred in Texas. The debt was first reported to Experian's Texas location in 2013, see Clifton Dec. ¶ 9; Clifton Reply Dec. Ex. J, a time when Deveroux was either in Texas or Arizona. All subsequent reports from TTM to Experian were made by TTM in Texas to Experian's offices in Texas. See Clifton Dec. ¶ 9. The only thing that connects TTM's credit reports to California is knowledge that Deveroux resides in California and would experience harm in California. That is, Deveroux is the only thing that connects TTM to California with respect to TTM's credit reporting. This connection is insufficient to meet Deveroux's burden.[3] See Walden, 134 U.S. 1124-25; Axiom Foods, 874 F.3d at 1068-70; Picot, 780 F.3d at 1211-12, 1214-15.

Deveroux relies heavily on *Myers v. The Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) to argue that, because TTM was misreporting the debt and the disputed status of the debt to

---

[3] Additionally, TTM has submitted evidence that rebuts Deveroux's assertion that it was not reporting the debt as "disputed" to Experian. Keith Clifton, TTM's president, explains that it reported the debt as "disputed" to Experian by using an "XB" notation in its report to Experian. See Clifton Reply Dec. ¶¶ 5, 6, 9 & Ex. J. "XB" is part of the Metro 2 Format, which is used to make credit reports to reporting agencies such as Experian, and means that a debt is disputed by the consumer. See id. From April 11, 2014 onward, TTM has included the XB notation in its Metro 2 submissions to Experian. See id.

8

Experian, and because TTM knew that he was a California resident, he was directly targeted by TTM and thus, there was express aiming.

Deveroux correctly describes the holding of *Myers*, a Fair Credit Reporting Act case. In relevant part, the Ninth Circuit in *Myers* addressed the *Calder* "effects test" and held that "express aiming" occurs "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Myers, 238 F.3d at 1072 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9t h Cir. 2000)). *Myers* found "direct targeting" and "express aiming" because the Utah defendants aimed their conduct at plaintiffs who were known to reside in Nevada. See id. at 1073-74. However, as indicated above, "direct targeting" by itself is no longer sufficient to meet the "express aiming" requirement of "purposeful direction." Axiom Foods, 874 F.3d at 1069-70; see also Walden, 134 U.S. 1124-25; Picot, 780 F.3d at 1214-15. The Supreme Court and the Ninth Circuit have emphasized that a plaintiff cannot be the only connection between a defendant and a forum, and merely because the plaintiff may experience harm in the forum does not show "express aiming." See Walden, 134 U.S. 1124-25; Axiom Foods, 874 F.3d at 1069-70; Picot, 780 F.3d at 1214-15. There must be contacts by the defendant with the forum, not merely with a forum resident. See id.

Here, Deveroux has sufficiently shown that TTM knew he was a resident of California from at least December 2015 forward. However, at best, Deveroux has only shown that TTM could reasonably expect his credit to be harmed while he was residing in California. Cf. Myers, 238 F.3d at 1073-74. Deveroux identifies no other connection by TTM to California. Under *Walden*, *Axiom Foods*, and *Picot*, knowledge of Deveroux's residence and knowledge that Deveroux will experience harm in California no longer satisfies the "express aiming requirement." See Walden, 134 U.S. 1124-25; Axiom Foods, 874 F.3d at 1069-70; Picot, 780 F.3d at 1214-15. Because *Myers* appears contrary to *Walden*, *Axiom Foods*, and *Picot*, it does not aid Deveroux. See id. Because "direct targeting" alone is not sufficient, TTM's credit reporting to Experian was not expressly aimed at California.[4]

---

[4] Deveroux also cites *Turner v. Regions Bank*, 770 F.Supp.2 1244 (M.D. Ala. 2011). Deveroux cites this case as being decided in 2015, but a review of the case shows that it was decided in 2011. *Turner* does not aid Deveroux for two reasons. First, the FDCPA claim involved debt collections notices directed to the plaintiffs in Alabama. Id. at

9

### (3) Harm

Each correspondence from TTM that was sent to Deveroux in California was sent in response to Deveroux himself disputing and requesting validation of the debt. See Clifton Reply Dec. Exs. E, F, G. The evidence submitted shows that TTM responded to Deveroux by validating the debt from Island Villas and/or referring Deveroux to a different collection agency. See id. at Exs. E, F, G, H. None of the California correspondences by TTM appear to demand any payment, make any threats regarding payment or nonpayment, or state that TTM is attempting to collect a debt. See id. & ¶ 10. Indeed, TTM declares that by the time Deveroux had moved to California, it was no longer attempting to collect the debt. See Clifton Dec. ¶ 8; see also Clifton Reply Dec. ¶ 10. Each of the correspondences was reactive/responsive and informational only. Deveroux does not explain how the correspondences from TTM that were sent to him in California caused him any harm. Therefore, Deveroux has failed to meet his burden of showing that the correspondences from TTM caused him harm. See Axiom Foods, 874 F.3d at 1068; Picot, 780 F.3d at 1211-12.

### (4) Conclusion

Deveroux has not met his burden of showing purposeful direction. The credit reporting activity occurred in Texas and has no connection to California, other than Deveroux residing in California. Therefore, the credit reporting activity was not expressly aimed at California. Further, although the correspondences to Deveroux were expressly aimed at California, the correspondences were responsive and informational only. Deveroux has not identified any harm that was caused by the correspondences. Without purposeful direction, there is no personal jurisdiction over TTM. See In re W. States, 715 F.3d at 742. Therefore, dismissal of Deveroux's FDCPA claim is appropriate.[5]

---

1248-49. Here, Deveroux received no similar notices. Second, *Turner* predates *Walden*, *Axiom Foods*, and *Picot*, and it is those cases, not *Turner*, that are binding on this Court.

[5] Deveroux requests an opportunity to amend his complaint if any aspect of TTM's motion is granted. However, the problems identified in this order are not pleading problems. The evidence submitted does not meet Deveroux's burden of establishing personal jurisdiction, and it is unclear how amendment could cure the lack of personal jurisdiction. Because amendment would be futile, Deveroux's request to amend is denied. See Hartmann v. California Dept. of Corr. & Rehab., 707 F.3d 1114, 1130 (9th Cir. 2013); see also Georgalis v. Facebook, Inc., 2018 U.S. Dist. LEXIS 101594, *12-*13 (N.D. Ohio June 15, 2018) (cases cited therein) (denying leave to amend on the basis of futility where the amended complaint would be susceptible to a Rule 12(b)(2) motion to dismiss).

2. State Law Claims

Deveroux invokes federal question jurisdiction in this case under 28 U.S.C. § 1331. See Complaint at ¶ 2. The Court has supplemental jurisdiction over Deveroux's state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." The general rule is "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." Religious Tech. Ctr v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992); Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985). Considering judicial economy, convenience, fairness, and comity, and because dismissal has been granted on Deveroux's only federal claim, the Court will decline to exercise supplemental jurisdiction over Deveroux's RFDCPA and CCRAA state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Religious Tech., 971 F.2d at 367-68; Honus Wagner Co. v. Luminary Grp., LLC, 2017 U.S. Dist. LEXIS 210097, *43-*44 (S.D. Fla. Dec. 21, 2017) (declining to exercise supplemental jurisdiction over state law claims following a Rule 12(b)(2) dismissal of federal claims).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(2) motion to dismiss is GRANTED with respect to the first cause of action and that claim is DISMISSED without leave to amend;
2. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the second and third causes of action; and
3. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

Dated: August 16, 2018

_____
SENIOR DISTRICT JUDGE